# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 21-0810V

| | |
|---|---|
| NABILA GEBRAN,<br><br>      Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>      Respondent. | Chief Special Master Corcoran<br><br>Filed: August 28, 2023 |

*Jimmy A. Zgheib, Zgheib Sayad, P.C., White Plains, NY, for Petitioner.*

*Jamica Marie Littles, U.S. Department of Justice, Washington, DC, for Respondent.*

### DECISION DISMISSING CASE[1]

On January 28, 2021, Nabila Gebran filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that she suffered a left shoulder injury related to vaccine administration ("SIRVA"), a defined Table injury, or in the alternative a causation-in-fact injury, after receiving a tetanus diphtheria ("Td")[3] vaccine on November 8, 2018. Petition at 1, ¶¶ 4, 18, 24-26.

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

[3] In her petition, Petitioner alleges that she received a "Tdap vaccination," the abbreviation commonly used for a tetanus, diphtheria, acellular pertussis vaccine. Petition at ¶ 4. In a signed statement, she describes the vaccine she received as "a tetanus shot." Exhibit 3 at ¶ 3. However, the vaccine record indicates Petitioner received a tetanus diphtheria vaccine, specifically the Tenivac vaccine - manufactured by Sanofi Pasteur Limited. Exhibit 2 at 2; https://www.fda.gov/vaccines-blood-biologics/vaccines/tenivac (last visited Aug. 22, 2023).

For the reasons set forth below, I hereby DENY entitlement in this case. Petitioner has not preponderantly established that she suffered the residual effects of the post-vaccination cellulitis she experienced for more than six months, or that the symptoms she first complained of more than ten months post-vaccination were vaccine caused.

## I.    Relevant Procedural History

Shortly after the case's initiation, Ms. Gebran filed the medical records required by the Vaccine Act. Exhibits 2, 4-8, ECF No. 6; *see* Section 11(c). She failed, however, to provide an affidavit, instead offering an electronically-signed statement which was not notarized or signed under penalty of perjury as required by 28 U.S.C.A. § 1746. Exhibit 3, ECF No. 6-4. On May 19, 2021, the case was activated and assigned to the "Special Processing Unit" (OSM's adjudicatory system for resolution of cases deemed likely to settle). ECF No. 8.

On October 12, 2021, Respondent indicated he had not identified any outstanding medical records or factual issues which could be addressed while awaiting medical review of the claim. ECF No. 13. Approximately five months later – on March 7, 2022 - Petitioner filed updated medical records. Exhibit 10, ECF No. 15. Although initially reluctant to provide a demand until Respondent expressed a willingness to engage in such discussions (ECF No. 16), on April 4, 2022, Petitioner provided a demand and supporting documentation to Respondent. ECF No. 19. She also filed additional updated medical records. Exhibits 11-12, ECF No. 18.

On June 6, 2022, Respondent expressed his belief that "this case is not appropriate for compensation." ECF No. 21. Approximately two months later (on August 11, 2022), he filed his Rule 4(c) Report formally setting forth the basis for this position. ECF 23. Specifically, Respondent maintains that the cellulitis Petitioner experienced shortly after vaccination had resolved within one month, and that the other symptoms for which she sought treatment nine months later were not connected to the vaccination she received, but instead attributable to potential alternative causes – thereby preventing Petitioner from establish injury severity. *Id.* at 10-11. Respondent also disputes that the record supports either a Table SIRVA or causation-in-fact claim. *Id.* at 10-13.

On March 7, 2023, I filed an order instructing Petitioner to provide additional evidence of severity or to other show cause why her claim should not be dismissed.[4] ECF No. 24. In response, on May 8, 2023, Petitioner filed affidavits from herself, her friend, and her sister; photographs of her arm (three of which are dated in November 2019,

---

[4] I also noted that some medical records may still be outstanding, and that Petitioner should ensure all required medical records had been filed. Order to Show Cause at 2 n.3.

December 2019, and March 2020); updated medical records; and additional briefing. Exhibits 13-21, ECF No. 27; Supplemental Brief Regarding Order to Show Cause ("Brief"), ECF No. 28. In her brief, Petitioner asks that I issue a factual ruling, finding that she suffered the residual effects of a SIRVA injury for more than six months. Brief at 2, 12.

The matter is now ripe for adjudication.

## II.   Applicable Legal Standards

As stated by Congress when amending the Vaccine Act in 1987, the six-month severity requirement was designed "to limit the availability of the compensation system to those individuals who are seriously injured from taking a vaccine." H.R. REP. 100-391(I), at 699 (1987), *reprinted in* 1987 U.S.C.C.A.N. 2313–1, 2313–373. The only exception is the alternative added in 2000, a showing that the vaccine injury required inpatient hospitalization and surgical intervention. *Children's Health Act of 2000*, Pub. L. No. 106–310, § 1701, 114 Stat. 1101, 1151 (2000) (codified as amended at 42 U.S.C. § 300aa–11(c)(1)(D)(iii)). This exception was added to allow compensation in intussusception cases which often required surgical intervention but then resolved in less than six months. *Id.*

## III.   Analysis

Petitioner maintains that her left shoulder pain began immediately upon vaccination in early November 2018, and continued unbated until she sought treatment in late September 2019. Petition at ¶¶ 6, 12-14; Exhibit 13 at ¶¶ 4, 9-12, 14; Brief at 4-5. She attributes her failure to report or seek treatment for her left shoulder pain until more than ten months post-vaccination to a loss in confidence in her primary care provider's ("PCP's") abilities following her November 2018 reaction to the Bactrim prescribed for her cellulitis, as well as the need to address previously suffered and unrelated medical conditions – congestive heart failure, left ventricular hypertrophy, dizziness, and facial numbness. Petition at ¶ 12; Exhibit 13 at ¶¶ 8-9, 12-13; Brief at 4. Petitioner stresses that her dizziness was severe enough to cause her to fall and injure her head, resulting in hospitalization, in June 2019. Petition at ¶ 12; Exhibit 13 at ¶¶ 12.

The medical records support Petitioner's assertion that she suffered *simultaneous* unrelated conditions which would have required treatment during this time. Aged sixty-three at the time of vaccination, Petitioner had been diagnosed with usual conditions such as hypertension, but also congestive heart failure, cervical dystonia, myalgias, osteopenia, osteoarthritis, and vertigo. Exhibit 4 at 72-73; Exhibit 5 at 12-298. Shortly before vaccination, she was seen by neurologist for ongoing symptoms - slurred speech

3

and dizziness. Exhibit 5 at 310-315. At the November 8, 2018 PCP appointment when she received the Td vaccine alleged as causal, Petitioner reported chronic dizziness and leg cramps. *Id.* at 326-310.

The records also establish that Petitioner suffered an immediate vaccination site reaction – cellulitis, and subsequent reaction to the medication prescribed for it. A week post-vaccination (November 15, 2018), she returned to her PCP complaining of redness and swelling of her left arm at the injection site. Exhibit 5 at 323. She was diagnosed with cellulitis and prescribed Bactrim. *Id.* at 325. On November 23, 2018, Petitioner returned to her PCP, complaining of a five-day fever and nausea, plus a recent rash over her body. Exhibit 5 at 336. The PCP instructed her to continue taking Bactrim, to take Zofran for her nausea and Benadryl and showers for her rash, and to go to the emergency room ("ER") if she suffered more serious symptoms such as a difficulty breathing. *Id.* at 340.

When seen at the ER the next day, Petitioner was hospitalized for her symptoms, along with hyponatremia[5] attributed to her increased water consumption. Exhibit 5 at 341. Her Bactrim was discontinued, and she briefly[6] took prednisone to combat her rash. When discharged on November 26, 2018, it was noted that Petitioner's cellulitis and rash had improved. Exhibit 5 at 341. She was instructed to follow-up with her PCP in a week. *Id.* at 342. At her a visit to her PCP a week later (on December 3rd), Petitioner's cellulitis was characterized as resolved. *Id.* at 361. And there is no further complaint of symptoms connected to the cellulitis Petitioner experienced beyond this date – approximately one-month post-vaccination.

However, there is **no evidence in the medical records** to support Petitioner's assertion that she suffered more typical SIRVA symptoms immediately upon vaccination, or during the subsequent nine-month period following the resolution of her cellulitis. Given her PCP's response to the adverse Bactrim reaction Petitioner suffered, any mistrust of his abilities would be understandable. However, Petitioner's claim in this regard is significantly undercut by numerous appointments with her PCP and other specialists, from December 2018 through mid-September 2019, for treatment of conditions such as dizziness, slurred speech, lower right leg pain, spinal osteopenia, shortness of breath, glaucoma, congenital heart disease and irregular heartbeat, facial numbness, gastrointestinal reflux disease, right knee pain, and a syncope event and fall in June 2019, without any complaints of left shoulder pain. Exhibit 5 at 367-485; Exhibit 7; Exhibit 8 at 3-11. It would be illogical for Petitioner to have neglected to make *any*

---

[5] Hyponatremia is a "deficiency of sodium in the blood." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY at 903 (32th ed. 2012).

[6] This medication was discontinued because Petitioner believed it caused her facial swelling. Exhibit 5 at 341.

4

mention of the alleged left shoulder difficulties at these multiple appointments (especially those involving complaints of right knee pain).

Furthermore, Petitioner's later symptoms were not simply a continuation of her earlier complaints, as she contends. Brief at 10-11 (comparing her case to a case involving a year-long gap in treatment, *Swanzer v. Sec'y of Health & Hum. Servs.,* No. 19-1970V, 2022 WL 703913, at *5 (fed. Cl. Spec. Mstr. Feb. 3, 2022)). Shortly after vaccination, Petitioner complained of "redness and swelling of the left upper arm at the site of injection [that] continued to spread down dowards [sic] elbow over the weekend." Exhibit 5 at 323. Although she indicated her condition was painful, she did not describe joint or muscle pain. *Id.*

In contrast, Petitioner first sought treatment from her PCP on September 23, 2019, for worsening left arm pain described as *muscle pain* from her shoulder to elbow, Exhibit 5 at 490. And she identified onset as occurring in May 2019. *Id.* Importantly, this time frame coincides with the trip Petitioner and her friend made to Florida. *See* Exhibit 13 at ¶¶ 10-11; Exhibit 14 at ¶ 8. Although Petitioner indicated that she believed her pain was related to the Td vaccine she received in November 2018 (*id.* at 491), the PCP disagreed, noting that it "would be unlikely to have tenderness from td this far out" (*id.* at 492). Rather, opining that the pain might be attributable to localized tendonitis, the PCP instructed Petitioner to avoid heavy lifting. *Id.*

The affidavits provided by Petitioner, her friend, and her sister offer *some* support for her claim of continued symptoms. *See* Exhibits 13-15. For example, her sister recalled that Petitioner missed their cousin's wedding in December 2018, shortly after her cellulitis was characterized as resolved, due to left shoulder and arm pain. Exhibit 15 at ¶ 6. However, if accurate, this pain would have been present only a few months post-vaccination, well before the date of the six-month mark. And the recollections of Petitioner and her friend – that Petitioner suffered significant left shoulder pain during their May 2019 trip to Florida, which increased in severity thereafter - weaken, rather than strengthen, Petitioner's position. *See* Exhibit 13 at ¶¶ 10-11; Exhibit 14 at ¶ 8. These statements support the premise that Petitioner's left shoulder pain began in *May 2019*, and was due to factors other than vaccination.

Otherwise, the probative value of these affidavits is slight, given that they were executed in early May 2023, more than four years after the described events, and in support of a legal claim initiated more than 27 years months earlier. In the Vaccine Program, such evidence is usually given less weight than information contained in contemporaneously created medical records. *See Cucuras v. Sec'y of Health & Human Servs.,* 993 F.2d 1525, 1528 (Fed. Cir. 1993) (indicating information recounted closer in time to the events described for the purpose of obtaining medical treatment is considered

more trustworthy). As I have previously stated, "memories of specific events tend to fade over time." *Marion v. Sec'y of Health & Hum. Servs.,* No. 19-0495V, 2020 WL 7054414, at *9 (Fed. Cl. Spec. Mstr. Oct. 27, 2020).

Similarly, the provided photographs offer little of probative value, as it is unclear what they are supposed to establish. The photographs appear to show a freckle or small bump and perhaps some shading on Petitioner's left, as opposed to right, arm. *See* Exhibit 16. However, it is difficult to truly ascertain any distinct differences. *See id.* And Petitioner has never alleged a continuation of the symptoms related to her cellulitis, only ongoing left shoulder pain and limitations in range of motion. Petition at ¶¶ 12-14, 17, 20-21; Brief at 2, 9-11.

Additionally, the record better proposes a different explanation for Petitioner's later left shoulder pain that has not adequately been addressed by Petitioner's showing herein. Petitioner's orthopedist considered the possibility of a SIRVA injury when Petitioner complained of both right knee and left shoulder pain on October 3rd, but she based this possibility upon Petitioner's narrative of "persistent pain, swelling, and paresthesia [of the] left arm following vaccine administration nearly one year ago" – a statement without any supporting medical record evidence. Exhibit 5 at 488. And when Petitioner reported symptoms to her neurologist on November 18th, he expressed his belief that they could be due to cervical radiculopathy, ordering a cervical MRI which showed "[m]ultilevel degenerative disc disease." *Id.* at 527, 533. During rheumatology appointments in December 2019 and February 2020, Petitioner was diagnosed with polymyalgia rheumatica thought to be the cause of her severe shoulder and hip girdle pain. Exhibit 4 at 66-68; Exhibit 5 at 546-549.

Petitioner attempts to discount her polymyalgia rheumatica diagnosis, implying it pertains only to her right knee pain. Brief at 8. However, she does so by citing only the medical record from her December 2019 visit when she complained solely of that pain. *See id.* (citing Exhibit 5 at 548-549). She neglects to mention the February 2020 visit involving complaints of hip and shoulder pain. *See* Exhibit 66-68. The record from this visit clearly shows the diagnosis applies to Petitioner's shoulder issues as well. *See id.* at 66.

Given the above, Petitioner has not provided sufficient evidence connecting the left shoulder pain she reported in September 2019 (more than ten months post-vaccination) to the cellulitis she experienced for approximately one month after her November 2018 vaccination. She has failed to provide preponderant evidence that she suffered the residual effects of any vaccine-related injury for more than six months, or to link the symptoms she complained of in September 2019 to the vaccination she received almost a year earlier.

**Conclusion**

To date, and despite ample opportunity, Petitioner has failed to provide preponderant evidence that she suffered the residual effects of the cellulitis she experienced immediately post-vaccination for more than six months or suffered an in hospital surgical intervention. Section 11(c)(1)(D). Furthermore, she has failed to provide preponderant evidence linking the left shoulder pain she complained of in late September 2019, to the Td vaccine she received on November 8, 2018. Instead, the record supports the premise that the left shoulder pain Petitioner suffered was due to unrelated conditions.

Petitioner was informed that failure to provide preponderant to satisfy the Vaccine Act's severity requirement would be treated as either a failure to prosecute this claim or as an inability to provide supporting documentation for this claim. Accordingly, this case is DISMISSED for failure to prosecute. The Clerk of Court shall enter judgment accordingly.[7]

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master

---

[7] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.