# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 21-0810V

| | |
|---|---|
| NABILA GEBRAN,<br><br>　　　　　　　　Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>　　　　　　　　Respondent. | Chief Special Master Corcoran<br><br>Filed: January 21, 2025 |

*Jimmy A. Zgheib, Zgheib Sayad, P.C.,* White Plains, NY, *for Petitioner.*

*Jamica Marie Littles, U.S. Department of Justice,* Washington, DC, *for Respondent.*

### DECISION ON ATTORNEY'S FEES AND COSTS[1]

On January 28, 2021, Nabila Gebran filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that she suffered a left shoulder injury related to vaccine administration ("SIRVA"), a defined Table injury, or in the alternative a causation-in-fact injury, after receiving a tetanus diphtheria ("Td") vaccine on November 8, 2018. Petition at 1, ¶¶ 4, 18, 24-26.

The case was dismissed, and Petitioner has now moved for a final award of fees. However, for the reasons set forth below, I find that Petitioner has failed to establish

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

reasonable basis in this claim. Thus, she is not entitled to an award of attorney's fees and costs, and the fees motion is denied.

## I. Relevant Procedural History

After determining, from an initial record review, that Petitioner appeared unlikely to be able to the six-month severity requirement, I allowed her the opportunity to correct the noted deficiency or to otherwise show cause why her claim should not be dismissed. ECF No. 24; *see* Section 11(c)(1)(D)(i) (severity requirement). The additional evidence and argument provided by Petitioner proved insufficient, and I dismissed her claim on August 28, 2023. ECF No. 29.

On October 2, 2023, Petitioner filed a request for an award of $46,635.91 in attorney's fees and costs. Petitioner's Application for Attorneys' Fees and Costs at 1, ECF No. 31. She insists that her claim possessed the statutory requirements of good faith and reasonable basis - prerequisites for any attorney's fees and costs award in unsuccessful cases. *Id.* at 2-6; *see* Section 15(e)(1). The accompanying billing records show Petitioner first contacted counsel on September 25, 2019. ECF No. 31-1 at 2. Respondent did not file a response.

## II. Applicable Legal Standards

Motivated by a desire to ensure that petitioners have adequate assistance from counsel when pursuing their claims, Congress determined that attorney's fees and costs may be awarded even in unsuccessful claims. H.R. REP. NO. 99-908, at 22 *reprinted in* 1986 U.S.C.C.A.N. 6344, 6363; *see also Sebelius v. Cloer*, 133 S.Ct. 1886, 1895 (2013) (discussing this goal when determining that attorneys' fees and costs may be awarded even when the petition was untimely filed). This is consistent with the fact that "the Vaccine Program employs a liberal fee-shifting scheme." *Davis v. Sec'y of Health & Hum. Servs.*, 105 Fed. Cl. 627, 634 (2012). Indeed, it may be the only federal fee-shifting statute that permits *unsuccessful* litigants to recover fees and costs.

However, Congress did not intend that *every* losing petition be automatically entitled to attorney's fees. *Perreira v. Sec'y of Health & Hum. Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994). And there is also a prerequisite to even obtaining fees in an unsuccessful case. The special master or court may award attorney's fees and costs to an unsuccessful claimant only if "the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." Section 15(e)(1). Reasonable basis is a prerequisite to a fee award for unsuccessful cases – but establishing it does not automatically *require* an award, as special masters are still empowered by the Act to deny or limit fees. *James-Cornelius on behalf of E. J. v. Sec'y of Health & Hum. Servs.*, 984

F.3d 1374, 1379 (Fed. Cir. 2021) ("even when these two requirements are satisfied, a special master retains discretion to grant or deny attorneys' fees").

As the Federal Circuit has explained, whether a discretionary fees award is appropriate involves two distinct inquiries, but only reasonable basis is at issue herein.[3] Reasonable basis is deemed "an objective test, satisfied through objective evidence." *Cottingham v. Sec'y of Health & Hum. Servs*., 971 F.3d 1337, 1344 (Fed. Cir. 2020) ("Cottingham I"). "The reasonable basis requirement examines "not at the likelihood of success [of a claim] but more to the feasibility of the claim." *Turner*, 2007 WL 4410030, at *6 (quoting *Di Roma v. Sec'y of Health & Hum. Servs.,* No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)). The Federal Circuit recently explained "that a reasonable basis analysis is limited to objective evidence, and that subjective considerations, such as counsel's subjective views on the adequacy of a complaint, do not factor into a reasonable basis determination." *James-Cornelius*, 984 F.3d at 1379.

Although clearly easier to meet than the preponderant standard required for compensation, "courts have struggled with the nature and quantum of evidence necessary to establish a reasonable basis." *Wirtshafter v. Sec'y of Health & Hum. Servs.,* 155 Fed. Cl. 665, 671 (Fed. Cl. 2021). "[I]t is generally accepted that 'a petitioner must furnish some evidence in support of the claim.'" *Id.* Citing the *prima facie* elements of a successful claim described in Section 11(c)(1), the Federal Circuit recently instructed that the level of the objective evidence sufficient for a special master to find reasonable basis should be "more than a mere scintilla but less than a preponderance of proof." *Cottingham I*, 971 F.3d at 1345-46. "This formulation does not appear to define reasonable basis so much as set its outer bounds." *Cottingham v. Sec'y of Health & Hum. Servs.,* 159 Fed. Cl. 328, 333, (Fed. Cl. 2022) (*"Cottingham II")*, *aff'd without op.*, 2023 WL 754047 (Fed. Cir. Nov. 14, 2023). "[T]he Federal Circuit's statement that a special master 'could' find reasonable basis based upon more than a mere scintilla does not mandate such a finding." *Cottingham II*, 159 Fed. Cl. at 333 (citing *Cottingham I*, 971 F.3d at 1346).

Furthermore, the issue of reasonable basis is not a static inquiry. The reasonable basis which existed when a claim was filed may cease to exist as further evidence is presented. *Perreira*, 33 F.3d at 1377. In *Perreira,* the Federal Circuit affirmed a special master's determination that reasonable basis was lost after Petitioner's "expert opinion,

---

[3] Claimants must also establish that the petition was brought in good faith. *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017) (quoting *Chuisano v. Sec'y of Health & Hum. Servs*., 116 Fed. Cl. 276, 289 (2014)). "[T]he 'good faith' requirement . . . focuses upon whether petitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Hum. Servs*., No. 99-0544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). But good faith is not disputed herein, and I do not ascertain evidence in the record calling it into question.

3

which formed the basis of the claim, was found to be unsupported by either medical literature or studies." *Id.* at 1376.

At issue here, Vaccine Act Section 11(c)(1)(D)(i) requires the establishment of an injury and residual effects lasting for over six months after the date of vaccination. This is a threshold requirement for entitlement. *Black v. Sec'y of Health & Hum. Servs.*, 33 Fed. Cl. 546, 550 (1995) (reasoning that the "potential petitioner" must not only make a *prima facie* case, but clear a jurisdictional threshold, by "submitting supporting documentation which reasonably demonstrates that a special master has jurisdiction to hear the merits of the case"), *aff'd*, 93 F.3d 781 (Fed. Cir. 1996) (internal citations omitted).

### III.   Evidence Provided by Medical Records and Affidavits

Aged sixty-three at the time of vaccination, Petitioner had been diagnosed with hypertension, congestive heart failure, cervical dystonia, myalgias, osteopenia, osteoarthritis, and vertigo. Exhibit 4 at 72-73; Exhibit 5 at 12-298. Shortly before vaccination, she was seen by a neurologist for ongoing symptoms - slurred speech and dizziness. Exhibit 5 at 310-315. At the November 8, 2018 primary care provider ("PCP") appointment when she received the Td vaccine alleged as causal, Petitioner reported chronic dizziness and leg cramps. *Id.* at 326-310.

A week post-vaccination (November 15, 2018), Petitioner returned to her PCP complaining of redness and swelling of her left arm at the injection site that spread downwards to her elbow. Exhibit 5 at 323. Diagnosed with cellulitis, she was prescribed Bactrim. *Id.* at 325. On November 23, 2018, Petitioner returned to her PCP, complaining of a five-day fever and nausea, plus a recent rash over her body. Exhibit 5 at 336. The PCP instructed her to continue taking Bactrim, to take Zofran for her nausea and Benadryl and showers for her rash, and to go to the emergency room ("ER") if she suffered more serious symptoms such as a difficulty breathing. *Id.* at 340.

When seen at the ER the next day, Petitioner was hospitalized for her symptoms, along with hyponatremia[4] attributed to her increased water consumption. Exhibit 5 at 341. Her Bactrim was discontinued, and she briefly[5] took prednisone to combat her rash. When discharged on November 26, 2018, it was noted that Petitioner's cellulitis and rash had improved. Exhibit 5 at 341. She was instructed to follow-up with her PCP in a week. *Id.* at 342.

---

[4] Hyponatremia is a "deficiency of sodium in the blood." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY at 903 (32th ed. 2012).

[5] This medication was discontinued because Petitioner believed it caused her facial swelling. Exhibit 5 at 341.

4

At a visit to her PCP a week later (on December 3rd), Petitioner's cellulitis was characterized as resolved. Ex. 5 at 361. And there is no further complaint of symptoms connected to the cellulitis Petitioner experienced beyond this date (now barely a month post-vaccination).

From December 2018 through mid-September 2019 – over nine months - Petitioner sought treatment of conditions such as dizziness, slurred speech, lower right leg pain, spinal osteopenia, shortness of breath, glaucoma, congenital heart disease and irregular heartbeat, facial numbness, gastrointestinal reflux disease, right knee pain, and a syncope event and fall in June 2019. Exhibit 5 at 367-485; Exhibit 7; Exhibit 8 at 3-11. She never complained of left shoulder pain at these visits. *Id.*

Petitioner first sought treatment for worsening left arm pain (described as *muscle pain*) from her shoulder to elbow from her PCP on September 23, 2019, approximately ten and one-half months post-vaccination. Exhibit 5 at 490. She identified onset as occurring in May 2019, adding that her pain had worsened that month. *Id.* at 490-91. Although Petitioner indicated that she believed her pain was related to the Td vaccine she received in November 2018 (*id.* at 491), the PCP disagreed, noting that it "would be unlikely to have tenderness from td this far out" (*id.* at 492). Instead, the PCP proposed that the pain might be attributable to localized tendonitis, and instructed Petitioner to avoid heavy lifting. He noted that Petitioner had an appointment scheduled with her orthopedist in early October. *Id.*

The orthopedic appointment, attended by Petitioner on October 3, 2019, was described as being for continued treatment of right knee pain plus a new complaint of left shoulder pain. Exhibit 5 at 488. At this appointment, Petitioner described "persistent pain, swelling, and paresthesia [of the] left arm following vaccine administration nearly one year ago." *Id.* Based upon this history, the orthopedist considered the possibility of a SIRVA, adding a cursory entry "? SIRVA" to the record. *Id.* However, the orthopedist did not provide this, or any other diagnosis. Instead, she prescribed physical therapy for Petitioner's right knee pain, and "[r]ecommend[ed] [an] MRI to further evaluate for pathology" for Petitioner's left shoulder pain. *Id.*

Undergone on October 11, 2019, the MRI showed "no evidence for an intramuscular tear . . . or denervation atrophy or muscle edema, [a] questionable tear of the anterior margin of the rotator cuff, [and] [s]mall glenohumeral joint effusion." Exhibit 5 at 513; *accord. Id.* at 515. Petitioner also underwent EMG testing on October 28, 2019, which yielded normal results. *Id.* at 516-17. The EMG report stated that Petitioner had experienced "left arm pain since vaccination 5/2018, [b]urning sensations in the arm over the last 5 months." *Id.* at 516.

5

When seen by her neurologist on November 18, 2019, Petitioner described "left arm pain after tetanus injection last year . . . mainly in [the] left upper arm/shoulder but has now spread to neck and forearms." Exhibit 5 at 533. The neurologist opined that the symptoms may be due to cervical radiculopathy and ordered a cervical MRI which showed "[m]ultilevel degenerative disc disease." Exhibit 5 at 533, 527 (results of the MRI). During rheumatology appointments in December 2019 and February 2020, Petitioner was diagnosed with polymyalgia rheumatica thought to be the cause of her right shoulder, thighs, and hip girdle pain. Exhibit 4 at 66-68; Exhibit 5 at 546-549.

In affidavits executed in May 2023, Petitioner, her sister, and her friend insisted Petitioner suffered from persistent shoulder pain from vaccination through September 2019. Exhibits 13-15. Her sister recalled that Petitioner missed their cousin's wedding in December 2018, shortly after her cellulitis was characterized as resolved, due to left shoulder and arm pain. Exhibit 15 at ¶ 6. Petitioner and her friend described an increase in Petitioner's shoulder pain during a trip they took to Florida in May 2019. Exhibit 13 at ¶¶ 10-11; Exhibit 14 at ¶ 8.

### IV.   Analysis – Reasonable Basis

The records establish that Petitioner suffered an immediate vaccination site reaction – cellulitis - and subsequent reaction to the medication prescribed for it. Although she reported her condition to be painful, she described only redness and swelling, but no joint or muscle pain. *Id.* And the cellulitis had resolved by early December 2018, less than one-month post-vaccination.

Despite attending numerous medical appointments for other conditions during eight to nine-month period thereafter, she made no complaint of any shoulder issue (including cellulitis). She did not seek treatment for, or even mention, *muscle* pain until September 23, 2019. And she stated that her pain began in *May 2019*. Importantly, this time frame coincides with the trip Petitioner and her friend made to Florida.

Although the orthopedist considered whether the symptoms Petitioner reported at her October 2019 appointment could be due to a SIRVA Injury, the orthopedist did so based upon Petitioner's report of continuous symptoms since vaccination – a history not supported by the objective evidence in this case. And there is no evidence that the orthopedist confirmed that was the appropriate diagnosis after the ordered testing. In fact, Petitioner then was seen by other specialists who provided alternative causes for the symptoms Petitioner first reported in September 2019.

There is thus no objective evidence in the contemporaneously created medical records to support Petitioner's assertion that she suffered more typical SIRVA symptoms

6

immediately upon vaccination, or during the subsequent nine-month period following the resolution of her cellulitis. At a minimum, Petitioner experienced shoulder pain, likely due to tendonitis, or her later diagnosed conditions, beginning in May 2019. Such a delayed onset shows the untenable nature of Petitioner's claim from the outset. And this is not a case in which the development of a fact, out of ambiguous records, *later* revealed that a claim that initially appeared viable in fact was not.

The record lacks objective support for Petitioner's alleged SIRVA injury, or any other vaccine-related injury for that matter. Under such circumstances, it is appropriate to expect counsel to review a claimant's records carefully before filing suit – and to place the risk of filing a case lacking reasonable basis on counsel when this does nor occur. No fees award is, therefore, appropriately allowed in this matter.

## Conclusion

The Vaccine Act permits an award of reasonable attorneys' fees and costs even to an unsuccessful litigant as long as the litigant establishes the Petition was brought in good faith and there was a reasonable basis for the claim for which the Petition was brought. Section 15(e)(1). But Petitioner has failed to provide evidence establishing there was a reasonable basis for filing her claim. **Petitioner's motion for attorney's fees and costs is therefore DENIED.**

The Clerk of the Court is directed to enter judgment in accordance with this Decision.[6]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[6] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.